**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TAYLOR LYNN W., o/b/o J.R.D.,

                Plaintiff,

   v.                                        5:23-CV-682
                                                     (MAD/DJS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**APPEARANCES:**                             **OF COUNSEL:**

OLINSKY LAW GROUP               HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 South Clinton Street
Ste. 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.     GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
Attorney for Defendant
6401 Security Blvd.
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(e).

and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 12, 19, & 20. For the reasons set forth below, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be denied and Defendant's Motion be granted.

## I. RELEVANT BACKGROUND

### A. Background

J.R.D. was born in 2019. Dkt. No. 11, Admin. Tr. ("Tr."), p. 267. J.R.D.'s mother applied for disability and disability insurance benefits on his behalf. *See* Tr. at p. 17. Plaintiff's application was initially denied on February 12, 2020, Tr. at pp. 81-86, and upon reconsideration on June 8, 2021. Tr. at pp. 91-102. She then requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at p. 103. The hearing took place before ALJ Kenneth Theurer on August 17, 2022, at which Plaintiff testified. Tr. at pp. 38-55. On September 2, 2022, the ALJ issued a written decision finding J.R.D. was not disabled under the Social Security Act. Tr. at pp. 17-27. On April 26, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### B. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. The ALJ found that J.R.D., given his age, had not engaged in substantial gainful activity since the application date. Tr. at p. 18. Second, the ALJ found that J.R.D. had the following severe impairments: congenital ptosis, congenital laryngomalacia, and short stature. *Id.* Third, the ALJ found that J.R.D. does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at pp. 18-19.  Fourth, the ALJ found that J.R.D. does not have an impairment or combination of impairments that functionally equals the severity of the listings.  Tr. at pp. 19-27.  As a result, the ALJ found that Plaintiff was not disabled.  Tr. at p. 27.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability of a Child

To qualify for social security income, a child under the age of eighteen must have "a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). The Social Security Regulations provide a three-step

4

sequential analysis to determine whether a child is disabled and therefore eligible for SSI. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 140 (N.D.N.Y. 2012).

First, the ALJ is to consider whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a medically determinable impairment that is severe. 20 C.F.R. § 416.924(c). Third, if the ALJ finds a severe impairment, he must then consider whether the impairment medically or functionally equals a disability in the Listings. 20 C.F.R. § 416.924(c)-(d).

There are three separate ways by which a claimant may establish that his impairment is medically equivalent to a listed impairment. 20 C.F.R. § 416.926(b). First, a claimant who has an impairment described in the listed impairments, but "do[es] not exhibit one or more findings specified in the particular listing, or ... [does] exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing," may establish medical equivalence by demonstrating other findings related to his impairment "that are at least of equal medical significance to the required criteria" of the listed impairment. 20 C.F.R. § 416.926(b)(1). Second, a claimant who has an impairment not described in the listed impairments may establish medical equivalence by demonstrating findings related to his impairment that "are at least of equal medical significance" to those of a "closely analogous listed impairment[ ]." 20 C.F.R. § 416.926(b)(2). Third, a claimant who has a combination of impairments, none of which are described in the listed impairments, may establish medical equivalence by demonstrating findings related to his combination of impairments that "are at least of

equal medical significance to those of a[n] [analogous] listed impairment. 20 C.F.R. § 416.926(b)(3).

To demonstrate functional equivalence to a disability, the child must exhibit a "marked" limitation in two of six functional domains, or an "extreme" limitation in one functional domains. The domains are 1) the child's ability to acquire and use information, 2) the child's ability to attend and complete tasks, 3) the child's ability to interact and relate with others, 4) the child's ability to move about and manipulate objects, 5) the child's ability to care for himself, and 6) the child's health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A child has a "marked" limitation if the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

### III. ANALYSIS

Plaintiff raises three issues for the Court's consideration. First, she contends that the ALJ erred in his evaluation and consideration of the opinion of Dr. Sandra Skeval. Dkt. No. 12, Pl.'s Mem. of Law at pp. 8-15. Second, Plaintiff alleges that the ALJ failed to develop the record when he failed to obtain a consultative examination. *Id.* at pp. 15-17. Finally, Plaintiff alleges that the ALJ did not apply the correct age categories. *Id.* at pp. 17-19. In response, Defendant submits that the ALJ properly evaluated a full and

complete record. Dkt. No. 19, Def.'s Mem. of Law, pp. 5-20. Having reviewed the record and considered the arguments of the parties, the Court recommends that the ALJ's decision be affirmed.

### A. Evaluation of the Medical Opinions

Plaintiff first objects to the ALJ's consideration of Dr. Sandra Skeval, J.R.D.'s treating physician. Pl.'s Mem. of Law at pp. 8-15. Specifically, Plaintiff objects that the ALJ failed to properly justify his conclusion that Dr. Skeval's opinion was "less persuasive" because he utilized "flawed" consistency and supportability analysis. *Id.*; Tr. at p. 21. Upon review of the ALJ's decision, the Court recommends finding that the ALJ's consideration of Dr. Skeval's opinion was sufficient and, in the alternative, any procedural error was harmless.

The Commissioner's regulations "require Defendant to consider . . . the supportability and consistency of an opinion with other evidence, the relationship of the medical provider with the patient, and the extent, if any, of a doctor's specialization." *James W. v. Kijakazi*, 2022 WL 685288, at *3 (N.D.N.Y. Mar. 8, 2022). "The supportability factor measures whether the medical opinion is supported by objective medical evidence and accompanying explanations. It does not measure whether the medical opinion is supported by a single doctor's findings." *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *8 (N.D.N.Y. Dec. 14, 2021). "To properly analyze consistency, the ALJ must conduct 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" *Darrell J. v.*

7

*Comm'r of Soc. Sec.*, 2024 WL 2028022, at *2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 2023369 (N.D.N.Y. May 6, 2024) (quoting *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)).

The record contains a medical opinion from Dr. Skeval. Tr. at pp. 825-828. It evaluates the relevant domains for a preschool child and the findings vary from domain to domain. While Dr. Skeval found no loss in some areas, she noted marked losses in several evaluative criteria in two domains – interacting and relating with others and moving about and manipulating objects. Tr. at p. 826. The ALJ found this opinion less persuasive because it was not consistent with the treating records. Tr. at p. 21.

Under the controlling regulations, the more consistent a particular medical opinion is with the evidence from other medical and, if relevant, nonmedical sources the more persuasive the medical opinion will be considered. *Alexa J. M. v. Kijakazi*, , 2023 WL 4467124, at *2 (N.D.N.Y. July 11, 2023). "With respect to 'supportability,' the regulations provide that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Scott A. W. v. Comm'r of Soc. Sec.*, 2024 WL 2023238, at *7 (N.D.N.Y. May 6, 2024) (quoting 20 C.F.R. § 404.1520c(c)(1)).

As to both supportability and consistency, Plaintiff alleges that the ALJ's analysis was "flawed." Pl.'s Mem. of Law at pp. 10 & 11.

Plaintiff's challenge to the supportability analysis appears to rest largely on the claim that the ALJ "failed to discuss Dr. Skeval's supporting explanations" in her opinion. Pl.'s Mem. of Law at p. 10. Some of the examples offered by Plaintiff, however, demonstrate the opposite. Dr. Skeval, for example, opined with respect to the interacting and relating with others domain that J.R.D. has "little use of words" and "doesn't follow rules he knows." Tr. at p. 826. The ALJ did not "fail to discuss" these comments. *See* Pl.'s Mem. of Law at p. 10. Instead he specifically noted that Dr. Skeval had reported losses in these areas. Tr. at p. 24. The ALJ simply found other evidence in the record regarding J.R.D. more persuasive. *Id.* The ALJ was free to do so given that the evidence he did credit was well supported in the record. *See Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, at *6 (N.D.N.Y. Mar. 18, 2019). That the ALJ may not have referenced other comments noted in Dr. Skeval's opinion does not require remand because the ALJ is not required to discuss every piece of evidence contained in the record. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

While Plaintiff relies on the medical record's notation of a "delayed milestone" during J.R.D.'s three year physical, Pl.'s Mem. of Law at p. 11, the record reflects that this was clearly in reference to the child's congenital ptosis, Tr. at p. 776, and later on that same page, Dr. Skeval characterized J.R.D. as a "Healthy child" with "Normal development." *Id.* The ALJ is entitled to review the record and his reliance on the latter statements, Tr. at p. 21, was certainly reasonable.

"Supportability 'looks at how well a medical source supported and explained his/her opinions about the patient.'" *Riaz v. Comm'r of Soc. Sec.*, 2022 WL 4482297, at *4 (S.D.N.Y. Sept. 27, 2022) (quoting *Herrera v. Comm'r of Soc. Sec.*, 2021 WL 4909955, at *6 (S.D.N.Y. Oct. 21, 2021)). While the ALJ's specific discussion noting that he found Dr. Skeval's report not persuasive was brief, when viewed in context, the ALJ provided a detailed review of the inconsistencies between the medical records and the medical opinion that more fully explained this conclusion. Tr. at pp. 21-27. Dr. Skeval's opinion did not cite to specific medical records and only occasionally provided short phrases as additional comments apart from the check-box format. Given the nature of the opinion at issue, this was sufficient. *See Tiffany T. v. Comm'r of Soc. Sec.*, 2023 WL 10949091, at *10 (D. Conn. Sept. 1, 2023), *report and recommendation adopted*, 2024 WL 1230256 (D. Conn. Mar. 22, 2024).

"Consistency evaluates medical opinions in a holistic context, considering how well a medical source is supported, or not supported, by the entire record." *Riaz v. Comm'r of Soc. Sec.*, 2022 WL 4482297, at *4. As noted, the ALJ cataloged the evidence in the record including those of the state agency review physicians, Dr. Skeval, and discussed J.R.D.'s medical records. Tr. at pp. 21-27. Plaintiff argues that the ALJ failed to properly analyze the evidence in the record. Pl.'s Mem. of Law at pp. 11-14. This argument is not a basis for remand. The ALJ certainly does not appear to have discussed every piece of evidence highlighted in Plaintiff's arguments, but he had no obligation to do so. *Casey Patricia S. v. Saul*, 2019 WL 6134414, at *8 (N.D.N.Y. Nov.

19, 2019). The record also demonstrates that when he found the record to establish greater limitations than some opinions called for, he did not hesitate to impose those greater limitations. *See* Tr. at p. 21.

Much of Plaintiff's argument focuses on evidence that arguably supports a finding of disability. That, however, is not the test for evaluating the sufficiency of the ALJ's analysis. "The question for the Court is not . . . whether there is substantial evidence supporting the appellant's view, but actually whether substantial evidence supported the ALJ's decision." *Ezequiel C. v. Kijakazi*, 2022 WL 2231178, at *4 (N.D.N.Y. May 12, 2022), *report and recommendation adopted*, 2022 WL 2230346 (N.D.N.Y. June 21, 2022) (internal quotations and citation omitted). Taken together, the record establishes that the ALJ adequately explained the basis for finding Dr. Skeval's opinion less persuasive.

Even were the ALJ's analysis legally insufficient, the Court would nonetheless recommend affirming on the ground that any error was harmless. "[A] reviewing court need not remand the case if the ALJ committed only harmless error, and the application of the correct legal principles to the record could lead only to the same conclusion." *Jacqueline O. v. Comm'r of Soc. Sec.*, 2022 WL 4463845, at *3 (S.D.N.Y. Sept. 26, 2022). The failure to properly consider persuasiveness and consistency is procedural error subject to this harmless error analysis. *See, e.g., Schillo v. Saul*, 31 F.4th 64, 75 (2d Cir. 2022). Here, even despite the ALJ's purported failure to provide a full explanation of these factors in evaluating Dr. Skeval's medical opinion, substantial

evidence clearly supported the conclusion that in the two areas where she found marked limitations, J.R.D., in fact, suffered less than serious limitations.

A error is "harmless where the record establishes application of the correct legal standard would not have changed the outcome of the disability determination." *James R. v. Kijakazi*, 2023 WL 5541798, at *7 (W.D.N.Y. Aug. 29, 2023). Functional equivalence is established by finding either an extreme limitation in one functional domain or marked limitations in any two of the domains. *Kelinne O. o/b/o K.P.Q. v. Comm'r of Soc. Sec.*, 2024 WL 2027907, at *3 (N.D.N.Y. Apr. 16, 2024), *report and recommendation adopted sub nom. Kelinne O. on Behalf of K.P.Q. v. O'Malley*, 2024 WL 2023395 (N.D.N.Y. May 6, 2024). There is no medical opinion suggesting an extreme limitation in any domain.

With respect to the domain involving moving about and manipulating objects, Dr. Skeval's July 2022 opinion noted marked loss with respect to waking and running with ease and climbing stairs and playground equipment. Tr. at p. 826. In January 2021, it was reported that he is "able to run, walk up steps and walk down steps." Tr. at p. 682. His motor strength was intact. Tr. at p. 683. In July 2021, J.R.D.'s medical records indicated that he "is able to run, walk up steps, walk down steps, kick ball forward." Tr. at p. 772. In March 2022, it was reported he could "kick ball forward, jump up and throw ball overhand and pedal a bike/tricycle." Tr. at p. 775. At the administrative hearing held in August 2022, just a few weeks after Dr. Skeval's opinion, Plaintiff reported that her son could walk okay, Tr. at p. 46, despite having recently

tripped in his driveway. Tr. at p. 49. In light of that objective evidence, which the ALJ specifically discussed, the conclusion that Dr. Skeval's unexplained, more restrictive findings were not persuasive as inconsistent with the record was clearly supported by substantial evidence. A more detailed analysis clearly would not have changed that result. *Scott A. C. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at *6 (N.D.N.Y. May 3, 2022), *report and recommendation adopted sub nom. Scott A. C. v. Kijakazi*, 2022 WL 2965585 (N.D.N.Y. July 27, 2022).

The only other domain where marked losses were noted was in the domain for interacting and relating with others. Dr. Skeval noted marked losses in the areas of using words instead of actions to express himself and understanding and following simple rules. Tr. at p. 826. The ALJ concluded that the record did not support these findings. Just a few months before Dr. Skeval's opinion, she noted that J.R.D. was a healthy child with "normal development." Tr. at p. 776. Nothing explains what changed in the interim to result in the findings of marked limitations. "An ALJ does not err in declining to adopt medical opinions that are offered without explanation and which are unsupported by the record, so long as the ALJ provides reasons for doing so." *Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 424 (S.D.N.Y. 2022).

### B. Failure to Obtain a Consultative Opinion

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "the ALJ generally has an affirmative obligation to develop the administrative record" due to the non-adversarial

nature of a hearing on disability benefits. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (citing cases). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).

"The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1519a(b)(4)); *see also Simon v. Colvin*, 2013 WL 4094612, at *6-7 (W.D.N.Y. Aug. 13, 2013) (finding no psychiatric consultative evaluation needed where substantial evidence existed in the record to support ALJ's conclusion)). "An ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination." *Phelps v. Colvin*, 20 F. Supp. 3d at 402 (quotation omitted). Conversely, "it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision." *Id.* (citing *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000)).

"As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Penny Ann*

14

*W. v. Berryhill*, 2018 WL 6674291, at *6 (N.D.N.Y. Dec. 19, 2018). Here, there were several evaluative reports of J.R.D. in the record. *See* Tr. at Exs. 2F & 17F. Plaintiff argues that an consultative exam should have been obtained regarding "his deficiency in language skills." Pl.'s Mem. of Law at p. 17. The Early Intervention evaluation specifically considered J.R.D.'s language skills, however. His "expressive language skills" were found to be "within typical limits." Tr. at p. 341. His "receptive language skills" were below average, but with a score of 86, it was only marginal in that range since a typical score would be between 90 and 110. *Id.* Dr. Skeval, J.R.D.'s treating physician, noted that "verbal communication is delayed." Tr. at p. 828. Nothing about either finding or the evidence regarding J.R.D.'s language skills more generally suggests that the ALJ was under an obligation to secure a consultative examination. *See* 20 C.F.R. § 416.919a(b). "A consultative examination is used to 'try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision' on the claim." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (quoting 20 C.F.R. § 416.919a(b)). That other evidence "could indicate greater functional limitations," Pl.'s Mem. of Law at p. 17, is not on its own a basis for requiring a consultative examination. "The ALJ's duty to develop the record is not a duty to go on a fishing expedition." *Castagna v. Berryhill*, 2017 WL 3084903, at *23 (S.D.N.Y. July 20, 2017).

## C. Whether the ALJ Properly Considered the Relevant Age Categories

The ALJ found that J.R.D. does not "have an impairment or combination of impairments that functionally equals the severity of the listings." Tr. at p. 19. In evaluating functional equivalence in children, the Commissioner of Social Security considers different age ranges – setting benchmarks depending on the child's age. 20 C.F.R. § 416.926a. During the course of proceedings in this matter, J.R.D. has transitioned through three age groups – newborn and young infants, older infants and toddlers, and preschool children. *See, e.g.*, 20 C.F.R. § 416.926a(g)(2)(i)-(iii) (identifying age group benchmarks for acquiring and using information). Plaintiff contends that the ALJ failed to properly consider the appropriate age group categories in rendering his decision. Pl.'s Mem. of Law at pp. 17-19. Because the record indicates to the contrary, this argument should be rejected.

Plaintiff correctly points out that an initial statement in the ALJ's decision that J.R.D. "is currently an older infant/toddler," Tr. at p. 18, was factually inaccurate because at the time of the decision J.R.D. was actually three years old and thus properly characterized as a preschool child. Pl.'s Mem. of Law at p. 18 (citing Tr. at p. 18); *see also* Def.'s Mem. of Law at p. 18 (conceding at time of ALJ's decision that J.R.D. was a preschooler). This error is harmless, however, because in evaluating actual functional equivalence, the ALJ considered each of the age categories. In each domain where functional equivalence is measured, the ALJ identified relevant benchmarks for each age category at issue. Tr. at pp. 22-25. He also specifically cited to evidence in the

record relevant to each time period to support his conclusions regarding equivalence. *Id.*; *see also* Def.'s Mem. of Law at p. 19 (tracking evidence cited from each age group). As a result, it is clear that the ALJ properly evaluated the correct age categories.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff disability benefits be **AFFIRMED** and the Complaint **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72

& 6(a).

Dated: August 12, 2024
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge