UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAYLOR LYNN W., o/b/o J.R.D.,

                               **Plaintiff,**

vs.                                             5:23-CV-682
                                                          (MAD/DJS)
**COMMISSIONER OF SOCIAL SECURITY,**

                               **Defendant.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**OLINSKY LAW GROUP**                   **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorney for Plaintiff

**SOCIAL SECURITY ADMININSTRATION**     **KRISTINA D. COHN, ESQ.**
Office of General Counsel
6401 Security Blvd.
Baltimore, Maryland 21235
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

On June 7, 2023, Taylor Lynn W. commenced this action on behalf of her son J.R.D. pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security Disability Insurance Benefits. *See* Dkt. No. 1. In a Report-Recommendation dated August 12, 2024, Magistrate Judge Daniel J. Stewart recommended that: (1) Plaintiff's motion for judgment on the Pleadings be denied; (2) Defendant's motion for judgment on the pleadings be granted; (3) the Commissioner's decision denying Plaintiff disability benefits be affirmed; and (4)

1

the Complaint be dismissed.  *See* Dkt. No. 21.  Plaintiff objected to the Report-Recommendation, *see* Dkt. No. 22, and Defendant filed a response in opposition.  *See* Dkt. No. 24.

For the following reasons, the Report-Recommendation is accepted and adopted in its entirety.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 685 (N.D.N.Y. 2015) (citation and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The parties have not raised any objections to the background or the legal framework set forth in the Report-Recommendation.  *See* Dkt. Nos. 22, 24.  The Court therefore adopts Magistrate Judge Stewart's summary of the factual and procedural background and applicable law and presumes familiarity with those matters for the purposes of this decision.

Plaintiff objects to Magistrate Judge Stewart's conclusions that the Administrative Law Judge's ("ALJ") determination is free from legal error and supported by substantial evidence.  *See* Dkt. No. 22.  Defendant argues that Plaintiff's objections rehash arguments that were presented to,

and rejected by, Magistrate Judge Stewart, and therefore should be reviewed for clear error only. *See* Dkt. No. 24 at 2.

Plaintiff sets forth specific objections to Magistrate Judge Stewart's Report-Recommendation, but the objections restate arguments she raised in her initial and reply briefs: that the ALJ erred in (1) reviewing the supportability and consistency of Dr. Sanra Skeval's opinions and the specific evidence found to undermine support for those opinions, *compare* Dkt. No. 12 at 8-15, *with* Dkt. No. 22 at 1-4; (2) failing to obtain a consultative examination, *compare* Dkt. No. 12 at 17-19, *with* Dkt. No. 22 at 4; and (3) failing to consider the correct age categories. *Compare* Dkt. No. 12 at 19-21, *with* Dkt. No. 22 at 5.  Magistrate Judge Stewart addressed Plaintiff's arguments concerning the supportability and consistency factors with respect to Dr. Skeval's opinion, and the specific evidence found to undermine that opinion.  *See* Dkt. No. 21 at 8-12.  Magistrate Judge Stewart also addressed Plaintiff's arguments concerning the ALJ's failures to obtain a consultative opinion and consider the relevant age categories.  *See id.* at 13-17.

As Plaintiff's objections rehash the arguments presented to Magistrate Judge Stewart, the Court will review the Report-Recommendation for clear error.  *See John L. M. v. Kijakazi*, No. 5:21-CV-368, 2022 WL 3500187, *1 (N.D.N.Y. Aug. 18, 2022) (citation omitted) ("To the extent a party makes 'merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments' set forth in the original submission, the Court will only review for clear error"); *Taylor v. Astrue*, 32 F. Supp. 3d 253, 260-61 (N.D.N.Y. 2012) ("[W]hen an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that report-recommendation to only a clear error review").

First, Plaintiff objects to Magistrate Judge Stewart's finding that "that the ALJ properly

3

considered the supportability factor because the ALJ 'specifically noted that Dr. Skeval had reported losses in these areas' of interacting with others and moving about and manipulating objects." Dkt. No. 22 at 1 (quoting Dkt. No. 21 at 9). Plaintiff argues that the ALJ's statements do not indicate that the ALJ properly analyzed the supporting explanations Dr. Skeval provided, including her assessment that J.R.D. had "[l]ittle use of words" and that his "[v]erbal communication is delayed." *Id.* Magistrate Judge Stewart specifically addressed these comments, and correctly stated that the "[t]he ALJ did not 'fail to discuss' these comments" but merely found other evidence more persuasive. Dkt. No. 21 at 9. Magistrate Judge Stewart also correctly stated that, although the ALJ "may not have referenced other comments noted in Dr. Skeval's opinion," *id.*, that omission does not require remand because "[a]n ALJ does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Plaintiff also argues that the record does not support Magistrate Judge Stewart's statement that "Dr. Skeval's diagnosis of a delayed milestone 'is clearly in reference to the child's congenital ptosis . . .'" Dkt. No. 22 at 2 (quoting Dkt. No. 21 at 9). In support of this objection, Plaintiff relies on the fact that Dr. Skeval marked separate assessments for "congenital ptosis" and "delayed milestone in childhood." *Id.* (citing Dkt. No. 11 at 781). According to Plaintiff, because the subjective section of the three-year well child visit indicated under the social/development section that Dr. Skeval "[d]iscussed and/or provided information on normal development at this age," that "implies that [J.R.D.'s] social skills were not at a normal development level." *Id.* (quoting Dkt. No. 11 at 780). The Court disagrees. The subjective section of the three-year well child visit to which Plaintiff refers also states that Dr. Skeval "[d]iscussed and/or provided information about car seats, helmet use, drowning prevention and use of life jackets." Dkt. No. 11

at 780. This does not imply that J.R.D. was not provided with a car seat, helmet, or any other safety equipment. Read in light of this context, the ALJ was not required to conclude that Dr. Skeval stated that provided information on normal development because J.R.D. had abnormal development.

Plaintiff contends that J.R.D. had a below average language score on October 13, 2019, and there is "no further objective testing in the record which would negate" that score. *See* Dkt. No. 22 at 2. Plaintiff also argues that the ALJ considered J.R.D.'s speech capacity, but not Dr. Skeval's opinion that J.R.D. had a loss of language and in using words. *See id.* Plaintiff is incorrect insofar as the record does not need to "negate" the assessment that J.R.D. had "a below average score in receptive language scores skills according to the Developmental Assessment of Young Children." Dkt. No. 22 at 2 (citing Dkt. No. 11 at 346). Although the record does contain some evidence that J.R.D. had below average language scores, as Magistrate Judge Stewart correctly noted, remand is not proper because the ALJ's decision is also supported by evidence in the record. *See* Dkt. No. 21 at 11; *see also Parent v. O'Malley*, No. 23-917, 2024 WL 3342463 (2d Cir. July 9, 2024) ("Under the substantial evidence standard, we can reject the ALJ's factual findings 'only if a reasonable factfinder would have to conclude otherwise'") (quoting *Brault*, 683 F.3d at 448). The record includes evidence which supports the Commissioner's decision. For example, the same Early Intervention Core Evaluation assessment which noted that J.R.D.'s receptive language was below average also found that J.R.D.'s expressive language skills were assessed at "a standard score of 91. A score between 90 and 110 is within typical limits in comparison to other children the same age." Dkt. No. 11 at 346. As Magistrate Judge Stewart noted, the ALJ specifically addressed the Early Intervention evaluation report's finding that J.R.D.'s receptive language skills were in the below average range, but also noted that "Dr.

Randall and Dr. Abueg both opined that the claimant has no limitation in this area." Dkt. No. 11 at 27. The Court finds no error in Magistrate Judge Stewart's conclusion that the ALJ's decision adequately satisfied the supportability factor.

Plaintiff objects to Magistrate Judge Stewart's determination that "Dr. Skeval assessed [J.R.D.] 'as a "Healthy child" with "Normal development."'" Dkt. No. 22 at 3 (quoting Dkt. No. 21 at 9, 13; Dkt. No. 11 at 781). Plaintiff claims that Magistrate Judge Stewart and the ALJ reached that opinion by selectively relying on the record and ignoring Dr. Skeval's diagnoses of congenital ptosis and delayed milestone. *See id.* However, Dr. Skeval made those assessments in the same March 4, 2022, report in which she assessed J.R.D. as having "congenital ptosis" and "[d]elayed milestone in childhood[.]" *see* Dkt. No. 11 at 781. Thus, those assessments are not inconsistent with the finding that J.R.D. was a healthy child with normal development. Additionally, the record contains other evidence supporting the ALJ's conclusion, including an evaluation from David Terasaka, M.D., finding that J.R.D. had intact motor strength, could kick a ball, walk on his tiptoes, manage puzzle pieces, string beads, drink from a cup without spilling, sort objects, and snap blocks together. *See* Dkt. No. 11 at 345, 777. Dr. Terasaka stated that J.R.D. was a "[h]ealthy appearing child." *Id.* at 778. Magistrate Judge Stewart did not err when he determined that the ALJ was entitled to conclude that J.R.D. was a healthy child with normal development after reviewing the record and placing more emphasis on some statements. Dkt. No. 21 at 9 (citing Dkt. No. 11 at 26). Magistrate Judge Stewart cited several reports in the record which support the conclusion that J.R.D.'s motor strength was intact. *See* Dkt. No. 21 at 12-13. Magistrate Judge Stewart found that "Dr. Skeval's unexplained, more restrictive findings were not persuasive" because they were inconsistent with the substantial evidence in the record indicating that J.R.D. had intact motor strength and was not showing a marked loss with respect to walking

6

and running.  *Id.* at 13.

Plaintiff objects to Magistrate Judge Stewart's conclusion because evidence in the record is consistent with Dr. Skevan's opinion that J.R.D. had a marked limitation in walking and running with ease and in climbing stairs and playground equipment.  *See* Dkt. No. 22 at 3. Plaintiff argues that the ALJ failed to address the evidence that was consistent with Dr. Skeval's opinion, specifically several statements from J.R.D.'s mother in 2020, stating that she was concerned about J.R.D.'s "constant chin-up position," and that J.R.D. "walks pretty well, but is having difficulty due to his chin elevation" and "trips and falls a lot."  *Id.* (quoting Dkt. No. 11 at 450, 576).  However, the presence of evidence in the record which could support a different finding of fact than the one reached by the Commissioner is immaterial, because the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise."  *Brault*, 683 F.3d at 448.

Magistrate Judge Stewart referred to several reports — showing that J.R.D. has intact motor skills — which are more recent than those Plaintiff relied on in her objection, including a report from July 2021, stating that J.R.D. "is able to run, walk up steps, walk down steps, kick ball forward."  Dkt. No 21 at 12 (quoting Dkt. No. 11 at 777).  Accordingly, the Court finds no clear error in Magistrate Judge Stewart's concision that there is substantial evidence in the record which supports the ALJ's decision and that the ALJ was entitled to rely more heavily on more recent statements.  *See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard") (citation omitted); *see also* 42 U.S.C. § 405(g).  Magistrate Judge Stewart correctly found that there was evidence in the record supporting the ALJ's conclusion that J.R.D. had good expressive

speech and intact motor strength.

Second, Plaintiff objects to Magistrate Judge Stewart's finding that the ALJ did not fail to develop the record adequately by failing to order a consultative language examination. *See* Dkt. No. 22 at 4-5. A consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). As Magistrate Judge Stewart correctly noted, "'it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision.'" Dkt. No. 21 at 14 (quoting *Phelps v. Colvin*, 20 F. Supp. 3d 392, 402 (W.D.N.Y. 2014)); *see also Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000). An ALJ is permitted to ask a child to attend a consultative examination to gather information about the child's functioning but is not required to order a consultative examination "if the facts do not warrant or suggest the need for such an examination." *Lefever v. Astrue*, No. 5:07-CV-622, 2010 WL 3909487, *7 (N.D.N.Y. Sept. 30, 2010) (citation omitted). Generally, "where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, *19 (W.D.N.Y. May 7, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). As Magistrate Judge Stewart correctly determined, there are several relevant evaluative reports in the record. *See* Dkt. No. 21 at 15.

Plaintiff suggests that language testing was warranted because J.R.D.'s three-year visit indicated that he had difficulties in his language development, such as not knowing his name or age. *See* Dkt. No. 22 at 4 (citing Dkt. No. 11 at 780). Plaintiff argues that the three-year visit

created "uncertainty" about J.R.D.'s language skills, and therefore a consultative examination was necessary to determine the full extent of his receptive language deficit. *See id.*

The record does not support Plaintiff's argument. Although the three-year visit report indicated that J.R.D. "does not know his name or age," it also stated that he "is able to name at least one color, use speech that is 100% understandable and use plurals in sentences." Dkt. No. 11 at 780. Magistrate Judge Stewart referenced Dr. Skeval's assessment from July 2022, stating that J.R.D.'s "verbal communication is delayed." Dkt. No. 21 at 15 (quoting Dkt. No. 11 at 833). That is not inconsistent with the Early Intervention evaluation which stated that J.R.D.'s "expressive language skills" were "within typical limits," and that his "receptive language skills" were marginally below average. *Id.* (quoting Dkt. No. 11 at 346). Nothing about the three-year visit creates uncertainty or inconsistency in the record about J.R.D.'s language skills. Given the extensive record in this case, the ALJ was not obligated to order a consultative examination to supplement the record in response to a few remarks that J.R.D.'s language proficiency was slightly below average. *See Felicia A. o/b/o O.A. v. Comm'r of Soc. Sec.*, No. 5:23-CV-668, 2024 WL 3696293, *5 (N.D.N.Y. Aug. 7, 2024) ("[T]he ALJ is required to seek out additional evidence only where there are obvious gaps in the record") (citing *Eusepi v. Colvin*, 595 Fed. Appx. 7, 9 (2d Cir. 2014)).

Third, Plaintiff objects to Magistrate Judge Stewart's finding that the ALJ properly considered the relevant age categories. *See* Dkt. No. 22 at 5. Magistrate Judge Stewart found that the ALJ inaccurately stated that J.R.D. "is currently an older infant/toddler," when J.R.D. was "actually three years old and thus properly characterized as a preschool child." Dkt. No. 21 at 15 (quoting Dkt. No. 11 at 23). Magistrate Judge Stewart found that the error is harmless because for each domain where functional equivalence is measured, the ALJ identified the relevant

benchmarks for each age category at issue. *See id.* (citing Dkt. No. 11 at 27-30). Plaintiff claims that "the ALJ did not describe the expectations for newborn/young infants, although J.R.D. was in that age category during the relevant period." Dkt. No. 22 at 5. Plaintiff explicitly states that she raised this argument in her initial brief, and the Court notes that Magistrate Judge Stewart already addressed the same argument. *See id.* (citing Dkt. No. 12 at 20); *see also* Dkt. No. 21 at 16-17. However, as Magistrate Judge Stewart noted, the ALJ did state the Social Security rules' expectations for infants for each of the functional equivalence domains. *See* Dkt. No. 11 at 26-31 (for example, the ALJ stated that the "Social Security rules provide that for infants and toddlers without an impairment should be beginning to explore actively a wide area of his physical environment, using his body with steadily increasing control and independence from others"). Accordingly, the Court finds no clear error in Magistrate Judge Stewart's determination that the ALJ properly evaluated the correct age categories.

After carefully reviewing the Report-Recommendation, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 21) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and dismiss Plaintiff's complaint; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 13, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge